IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT LAND** | : CIVIL ACTION |
| v. | : |
| | : NO. 15-5240 |
| **DELTA AIR LINES, INC.** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                     **December 7, 2015**

Attorney Robert Land, acting *pro se,* alleges Delta Air Lines falsely imprisoned and intentionally or negligently inflicted emotional distress upon him because it did not allow him to run onto a plane after he ran late for his flight and then refused to leave the plane unless the police removed him. He claims Delta acted improperly after he ducked the Delta agent to walk onto the plane and then, after he wouldn't leave, called the police who then arrested him. After granting him leave to amend, he still cannot plead false imprisonment or infliction of emotional distress. He alleges, without specificity, Delta inflicted emotional distress on him by identifying him to the police so he could be removed from the plane after he told it to do so. He created this hullaballoo believing his "Skymiles" status allowed him to break rules applying to others. His plead claims on false imprisonment and infliction of emotional distress lack merit.[1]

### I.     Facts alleged in Amended Complaint

Pennsylvania attorney Robert Land ("Land") bought a ticket to fly on Delta Air Lines ("Delta") leaving Philadelphia and arriving in San Diego, California, with a layover in Atlanta, Georgia. (ECF Doc. No 18, ¶1). On April 19, 2013, Delta's flight from Philadelphia arrived late in Atlanta. *Id.* ¶2. When Land arrived at his gate for the San Diego flight, Delta left the door to the jet-way open without a gate agent. *Id.* ¶3. Land entered the jet-way without authority.

When he was approximately thirty feet down the jet-way, a Delta employee stopped Land and told him it had closed the flight. *Id.* Land showed his boarding pass and his Delta Skymiles American Express credit card. *Id.* Delta instructed Land to get off the jet-way. *Id.* Land responded he could board because passengers were still in line. *Id.* Delta refused and Land alleges a Delta employee pushed him. *Id.*

Land then "feinted" to his left and passed the Delta agent on the right, boarded the plane and took his empty designated seat. *Id.* Another Delta employee approached Land and told him to get off the plane. *Id.* Land agreed to do so if Delta would scan his ticket and let him back on the plane. *Id.* Delta refused to change its policies for Attorney Land. It told Land to leave the plane immediately. *Id.* Land reminded the Delta employee "of the business relationship between him and Delta (presumably based on his Skymiles status) and how good business practices would dictate he be treated with respect and accommodation." *Id.* Delta told Land to leave the plane or face arrest. *Id.* Land told Delta he would leave only if the police or TSA requested him to do so. *Id.* Delta's employee then left and summoned the City of Atlanta police. *Id.*

Officer Turner of the Atlanta Police Department then entered the aircraft. *Id.* ¶4. Once Land saw the officer, he left the plane and spoke to the police in front of Delta in the jet-way. *Id.* The police asked Delta, "Prosecute?" to which Delta responded, "Yes!" *Id.* The police officer immediately spun him around and handcuffed him behind his back, led him down the jet-way's portable steps to the tarmac and threw him in the backseat of a police vehicle. *Id.* ¶5 Land remained handcuffed for an hour or more while the police completed paperwork. *Id.* The police took Land to a holding cell in the airport where Land remained for another hour. *Id.* ¶6.

The police then transported Land to a city prison handcuffed behind the back, but not otherwise restrained. *Id.* ¶8. The police booked, photographed and fingerprinted Land. *Id.* ¶9.

2

The police charged him with disorderly conduct with violence, and failure to obey signage. *Id.* Land posted bail and the police released him at 4:00 a.m. on April 20, 2013. *Id.* Land remained in custody for eleven (11) hours. *Id.* The police eventually dismissed all criminal charges. *Id.* ¶12.

Land retrieved his belongings. *Id.* ¶10. Delta cancelled his connecting flights from Atlanta to San Diego and from Los Angeles to Philadelphia because he breached security. *Id.* ¶11. Delta offered to sell him a one-way ticket to San Diego for $550.00. *Id.*

## II. Analysis

### a. Land cannot state a claim for false imprisonment.

After two attempts, Land does not allege false imprisonment by Delta. "The elements of false arrest/false imprisonment are: (1) the detention of another person (2) that is unlawful. 'An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not.'" *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010) (citing *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)). Land does not allege Delta detained him; instead he alleges Delta identified him to the Atlanta Police, and said "yes" when the officer asked whether to prosecute. (ECF Doc. No 18 at ¶4). Land's other allegations of detention relate to the conduct of the Atlanta Police rather than Delta.

Land does not allege his detention is unlawful.[1] Land admits he entered the plane after Delta's agent told him he could not after "feinting" his way through the jet-way and remained on the plane after repeatedly asked to leave. (ECF Doc. No 18, ¶2). Land does not challenge the validity of his arrest nor does he claim the arrest is not authorized by law. The police arrested

---

[1] Black's Law Dictionary defines "unlawful" as "**1.** Not authorized by law; illegal <in some cities, jaywalking is unlawful>. **2.** Criminally punishable <unlawful entry>. **3.** Involving moral turpitude <the preacher spoke to the congregation about the unlawful activities of gambling and drinking>." UNLAWFUL, Black's Law Dictionary (10th ed. 2014).

3

Land after he refused to leave the plane which he admits entering after Delta told him not to. *Id.* ¶¶3, 4.

Land does not plead any conduct by Delta apart from calling the police and, when asked a one-word question, saying "yes." *Id.* ¶11. "[A] private individual who provided false information to law enforcement officials could be held liable for a false arrest or imprisonment resulting from that false information." *Doby v. Decrescenzo*, No. 94-3991, 1996 WL 510095, *12 (E.D. Pa. 1996) (citing *Gilbert v. Feld,* 788 F.Supp. 854, 862 (E.D.Pa.1992)). Land does not plead facts to support a claim Delta provided false information to the police resulting in his arrest. Land does not plead Delta provided incomplete or misleading information resulting in his detention. *Doby*, at *13. Delta's motion to dismiss Land's claim for false imprisonment is granted.

### b. Land cannot state a claim for intentional infliction of emotional distress.

After two attempts, Land does not plead an intentional infliction of emotional distress. "[A] person who by extreme and outrageous conduct intentionally or recklessly causes severe or emotional distress to another is subject to liability for such emotional distress. The Restatement defines outrageous conduct as conduct or statements which go beyond all bounds of decency and are regarded as utterly intolerable in a civilized community." *Carson v. City of Philadelphia*, 574 A.2d 1184, 1187 (Pa. Cmwlth. 1990).

Land does not plead conduct by Delta going "beyond all bounds of decency and are regarded as utterly intolerable in a civilized community." *Id.* Land alleges Delta did not let him board an aircraft; asked him to leave when he boarded the aircraft after feigning and going around Delta's agent; and, upon his refusal to leave without police involvement, contacted the Atlanta Police to remove him. (ECF Doc. No 18 at ¶2). We wonder what other remedy Delta

4

may have other than "bend" its own policies and possibly FAA guidelines. While Land alleges Delta's conduct meets the standard for intentional infliction of emotional distress, the allegation is a legal conclusion not entitled to the assumption of truth. *See Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 675, 679) (footnote omitted). Delta's motion to dismiss Land's claim for intentional infliction of emotional distress is granted.

### c. Land cannot state a claim for negligent infliction of emotional distress.

Attorney Land appears to alternatively claim negligent infliction of emotional distress. (ECF Doc. No. 18 at ¶17). This cause of action "is restricted to four factual scenarios: (1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative. *Toney v. Chester Cty. Hosp.*, 961 A.2d 192, 197-98 (Pa. Super. 2008) (citing *Doe v. Philadelphia Community Health Alternatives AIDS Task Force*, 745 A.2d 25, 26 (Pa.Super.2000)). None of these theories are plead here.

At best, Land's claim is limited to the first two theories because he does not allege zone of danger or observing a tortious injury to a close relative. To sustain a claim under the contractual or fiduciary duty theory, "a plaintiff must establish the elements of a negligence claim, 'i.e., that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage.'" *Toney*, 961 A.2d at 198 (citing *Brown v. Philadelphia College of Osteopathic Medicine*, 760 A.2d 863, 868 (Pa.Super.2000)). Land does not allege negligence by Delta, precluding recovery under this theory.

To sustain a claim under the physical impact theory, a plaintiff must sustain bodily injury "accompanied by fright or mental suffering directly traceable to the peril in which the defendant's negligence placed the plaintiff." *Brown v. Philadelphia Coll. of Osteopathic Med.*, 674 A.2d 1130, 1135-36 (Pa. Super. 1996). Land does not allege physical injury or peril by Delta accompanied by fright or mental suffering, precluding recovery under this theory.

### III. Conclusion

After two attempts, Land does not state claims for false imprisonment, intentional infliction of emotional distress, or negligent infliction of emotional distress. Land does not allege Delta detained him or provided false information to the police leading to his detention. Land does not allege conduct by Delta sufficient for intentional infliction of emotional distress. Land does not allege negligence on the part of Delta supporting a claim for negligent infliction of emotional distress. Delta's motion to dismiss Counts I and III of the amended complaint is granted in the accompanying order.

---

[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "the court must 'tak[e] notice of the elements a plaintiff must plead to state a claim;'" (2) "the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679) (footnote omitted)[1]; *see also, Burtch,* 662 F.3d at 221;

6

*Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011) ("This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.")